# In the United States Court of Federal Claims
## NO. 19-900C
### (Filed:  December 12, 2019)

**SANDSTONE ASSOCIATES, INC.**                                          **Plaintiff**

**v.**

**THE UNITED STATES OF AMERICA**                                       **Defendant**

*Ted Del Guercio, III*, McManimon, Scotland & Bauman, LLC, of Roseland, New Jersey, for the Plaintiff.

*Elizabeth M. Hosford*, Assistant Director, and *John M. McAdams III*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C. for the Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

*TAPP*, Judge.

The United States moves to dismiss Plaintiff Sandstone Associates' Complaint as time barred by 41 U.S.C. § 7104(b)(3). That motion is **GRANTED**.

### Introduction

The facts relevant to the United States' motion are not controverted. In 2002, Sandstone entered a lease with the U.S. Postal Service related to property located in Newark, New Jersey, which was intended for postal operations. Pl. Complaint at 2, *Sandstone Associates, Inc. v. United States*, No. 19-900C (Fed. Cl. June 20, 2019), ECF No. 1 (Compl.). The agreement noted the lease was subject to the Contract Disputes Act ("CDA").[1] Def.'s Mot. For Summ. J. (Def.'s Mot.) App'x. at DA10, ECF No. 8. As part of the agreement, the USPS was to reimburse real property taxes for its lease of the property provided Sandstone made a demand for payment within 18 months of the end of the relevant tax years. Compl. at 2, ECF No. 1.

---

[1] Paragraph A.13a of the General Conditions to USPS Lease states "This contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601–613) ("the Act")". In its December 14, 2017 claim, Sandstone acknowledged that its claim "is being submitted pursuant to . . . the Lease and the Contract Disputes Act of 1978 . . . "

On December 14, 2017, Sandstone's then counsel, Rashaan S. Williams, made a written demand for payment of taxes for 2017 and 2016. *Id*. That demand was within 18 months of the 2017 and 2016 tax years. *Id*. In addition, Williams' December 14, 2017, letter on behalf of Sandstone demanded payment for the 2015 and 2014 tax years. *Id*. at 3. Williams asserted that the demand for those years could not have been made until closing of title following the June 13, 2017 sale of the property, at which time a pre-existing tax lien and additional charges could be paid, ripening Sandstone's demand for reimbursement for 2015 and 2014. *Id*. Williams sought a total of $105,796.44. Ex. B to Compl. at 2, ECF No. 1-2.

On May 7, 2018, Paul S. Frye, the Contracting Officer for the USPS ("C.O. Frye"), denied Sandstone's claim.[2] Ex. D to Compl. at 2, ECF No. 1-4. The denial included notice to Sandstone that it could seek review of C.O. Frye's decision by appeal to the Postal Service Board of Contract Appeals or alternatively to the United States Court of Federal Claims. *Id*. The notice also informed Williams that an appeal to the Court of Federal Claims must be brought within twelve months of receipt of C.O. Frye's denial. *Id*. C.O. Frye mailed the denial to Williams at the address provided by Sandstone in its original verified claim by certified mail, return receipt requested.[3] *Id*. at 1.

Williams received C.O. Frye's denial by U.S. Mail on May 24, 2018. Def.'s Mot. App'x. at DA23, ECF No. 8. On June 20, 2019, Sandstone filed its Complaint seeking recovery of $34,150.19, the amount Sandstone asserts was due as a result of the USPS's denial of tax year reimbursements for 2014–2017, as well as attorneys' fees and costs. Compl. at 7, ECF No. 1.

The United States moves to dismiss pursuant to RCFC 12(b)(1) alleging that the Court lacks subject-matter jurisdiction given that Sandstone filed its Complaint more than 12 months after receiving Fry's final decision. The Court agrees.

### Analysis

The Tucker Act provides this Court with jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. The Tucker Act "operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)[,]" if those sources of law "'can fairly be interpreted as mandating compensation by the Federal Government.'" *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009) (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)).

---

[2] Fry's disallowance incorrectly referenced a claim dated February 3, 2018, instead of the correct date of claim: December 14, 2017. That error is not of consequence to the determination of the United States' Motion to Dismiss.

[3] Sandstone does not contest that C.O. Frye's mailed the denial to 433 Jelliff Avenue, Newark, New Jersey 07112. Sandstone's claim, dated December 14, 2017—which was submitted on Williams' letterhead, signed by Williams, and certified by Cecil H. Sanders, Jr., President of Sandstone Associates, Inc.—states "The Williams Firm is the legal representative for SANDSTONE ASSOCIATION, INC. (hereinafter "Sandstone")." The Williams Firm letterhead provided the Jelliff Avenue mailing address used by C.O. Frye. Interestingly, though not particularly material to the United States' Motion to Dismiss, is that Williams himself misstated his client's name using "Association" in lieu of the correct "Associates."

"The Tucker Act is only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Act merely confers jurisdiction upon [the Court of Federal Claims] whenever the substantive right exists. Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity with respect to their claims." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (cleaned up).

This Court only has jurisdiction in contract cases under the Tucker Act when a plaintiff is in privity with the Government. *Park Properties Assocs., L.P. v. United States*, 916 F.3d 998, 1002 (Fed. Cir. 2019), *petition for cert. filed*, No. 19-268 (Aug. 29, 2019). The plaintiff bears the burden of proving, by a preponderance of evidence, that a court possesses subject-matter jurisdiction. *Id.* at 1002; *Fidelity & Guar. Ins. Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015).

Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (subject-matter jurisdiction cannot be forfeited or waived because it "involves a court's power to hear a case"); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[A] federal court [must] satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case.") (quoting *Steel Co.*, 523 U.S. at 101–02); *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006) (subject-matter jurisdiction is "an inflexible threshhold matter that must be considered before proceeding to evaluate the merits of a case."). If the court finds that it lacks subject-matter jurisdiction over a claim, the court is required to dismiss the claim. RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While jurisdiction under the Tucker Act exists for monetary claims arising under federal law, 28 U.S.C. § 1491(a)(1), a claim based on contract is also subject to the CDA. 41 U.S.C. §§ 7101–7109. The CDA provides for appeals to this Court from a Contracting Officer's decision. 41 U.S.C. § 7104(b)(1). As Williams (Sandstone's attorney) was informed, the CDA also requires that such appeals be made "within 12 months from the date of receipt of a contracting officer's decision . . . ." *Id.* at (b)(3).

This latter provision is jurisdictional. *Hart v. United States*, 910 F.2d 815, 818–19 (Fed. Cir. 1990). "Statutes of limitations, such as contained in the CDA, are 'waiver[s] of sovereign immunity and thus must be strictly construed.'" *Hamza v. United States*, 36 Fed. Cl. 10, 13–14 (1996) (quoting *Bowen v. City of New York*, 476 U.S. 467, 479 (1986)). Accordingly, the Court must focus its "inquiry on the date of receipt by the contractor, not the date of actual notice to the contractor." *Borough of Alpine v. United States*, 923 F.2d 170, 172 (Fed. Cir. 1991).

Trial courts may not read into the CDA exceptions or tolling provisions not authorized by Congress. *See Gregory Lumber Co. v. United States*, 229 Ct. Cl. 762, 763 (1982). Nor can the court "extend jurisdiction in the interest of equity." *UNR Indus., Inc. v. United States*, 962 F.2d 1013, 1023 (Fed. Cir. 1992) (*en banc*), *aff'd sub nom. Keene Corp. v. United States*, 508 U.S. 200 (1993); *see also White Buffalo Constr., Inc. v. United States*, 28 Fed. Cl. 145, 147 (1992) ("Because Congress legislatively mandated the twelve-month time period, it cannot be extended out of sympathy for particular litigants, even if this effects a seemingly harsh result."); *see also*

*United States v. Kasler Elec. Co.*, 123 F.3d 341, 346 (6th Cir. 1997) ("The provisions of the CDA allowing a contractor to dispute the government's claims regarding a contract are specific, unambiguous, and exclusive; the statute clearly states that a contractor may seek review of a final decision *only* in a board of contract appeals or in the Court of Federal Claims. Absent commencement of such review within the prescribed period, the decision becomes impervious to any substantive review.") (citing 41 U.S.C. §§ 605(b), 606, 609(a)).

Here, the United States contends, and Sandstone does not dispute, that Sandstone filed its Complaint more than 12 months after Sandstone received C.O. Frye's final decision denying its claim for reimbursement for property taxes arising from tax years 2014–2017. Sandstone's attorney received Frye's decision on May 24, 2018. The 12-month provision of the CDA commenced upon receipt. 41 U.S.C. § 7104(b)(3). Sandstone filed its' Complaint on June 20, 2019, nearly one month after the period of limitation had expired.

Alternatively, Sandstone argues that the 12-month period provided in the CDA "should be relaxed for good cause shown." Pl.'s Opp. to Def.'s Mot. To Dismiss (Pl.'s Opp.) at 1–2, ECF No. 9. That "good cause," in Sandstone's view, relates to the receipt of Frye's final decision by its attorney rather than Sandstone itself. *Id.* at 2. In other words, Sandstone argues no prejudice results to the United States if the Court "relaxes" the otherwise applicable deadline, and the statutory time bar imposed by 41 U.S.C. § 7104(b)(3) should be construed only as to Sandstone's claim of an express contract, not the alternative theories of unjust enrichment, quantum meriut and book account pled in its Complaint.

These arguments are unavailing. First, as noted above, this Court only has "jurisdiction over actions brought on claims within twelve months of a contracting officer's final decision." *K-Con Bldg. Sys. Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015) (internal quotations omitted); *accord Arctic Slope Native Ass'n v. Sebelius*, 583 F.3d 785, 793 (Fed. Cir. 2009) ("[T]he timely submission of a claim to a contracting officer is a necessary predicate to the exercise of jurisdiction by a court . . . over a contract dispute governed by the CDA.").

The triggering event for application of 41 U.S.C. § 7104(b)(3) is receipt of the contracting officer's decision. *See Pathman Cont. Inc. v. United States*, 817 F.2d 1573, 1580 (Fed. Cir. 1987) (noting that it was unlikely Congress intended the limitations period to begin to run upon a claim deemed denied rather than receipt of a final decision by a contracting officer.). Here, Sandstone concedes that its then-counsel (Williams) received notice of C.O. Fry's decision denying reimbursement on May 24, 2018 by U.S. Mail. Pl.'s Opp. at 2, ECF No. 9.

In *Policy Analysis Co., Inc. v. United States*, 50 Fed. Cl. 626, 629 (2001), the court rejected the argument that notice of the contracting officer's decision received in the mail by an employee of the plaintiff was insufficient. In rejecting Policy Analysis' argument, the court relied upon multiple cases: *Kasler/Continental Heller/Fruin Colnon v. United States*, 9 Cl. Ct. 187, 189 (1985) (involving retrieval of final decision of contracting officer from a postal box *after* normal business hours); *Borough of Alpine*, 923 F.2d at 171–72 (involving retrieval of mail by *employee* of plaintiff rather than plaintiff itself); *Hamza v. United States*, 36 Fed. Cl. 10, 14 (1996) (involving receipt of notice by plaintiff's attorney); and *Structural Finishing, Inc. v. United States*, 14 Cl. Ct. 447, 449 (1988) (involving receipt of claim by plaintiff's attorney).

*"*These cases illuminate the underlying policy of the CDA to avoid distinctions among the various arrangements by which contractors receive and disseminate mail." *Policy Analysis*, 50 Fed. Cl. at 631. This Court cannot engraft an exception to the compulsory jurisdictional constraints of the CDA.  "Courts created by statute can have no jurisdiction but such as the statute confers." *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818 (quoting *Sheldon v. Sill*, 49 U.S. 441, 449 (1850)).

"Receipt" of C.O. Fry's decision, as that term is used within 41 U.S.C. § 7104(b)(3), occurred when Sandstone's attorney accepted Fry's mailed decision denying reimbursement. As a result, dismissal of Sandstone's claim against the United States is required. Sandstone may yet seek to recoup its loss, but in another forum and involving a different sort of claim.

Second, Sandstone's inclusion of other claims within its Complaint is also fruitless. As the United States correctly notes, Def.'s Mot. at 8, claims that "'arise from the same operative facts' and seek 'essentially the same relief' will be deemed to be the same claims as those previously submitted to the contracting officer even if 'differing legal theories for that recovery' are presented, or the claims are not presented using the 'exact language or structure of the original administrative CDA claim.'" *Planate Management Group, LLC v. United States*, 139 Fed. Cl. 61, 71 (2018) (quoting *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003)).

Moreover, as the United States again correctly observes, claims such as unjust enrichment (Count Two), quantum meruit (Count Three), and Book Account (Count Four), are not recoverable in the U.S. Court of Federal Claims.[4] *See 8x8, Inc. v. United States*, 854 F.3d 1376, 1383 n.7 (Fed. Cir. 2017) (CFC lacks jurisdiction over unjust enrichment claims) (citing *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997); *Lee v. United States*, 130 Fed. Cl. 243, 260 (2017) ("[T]he Court of Federal Claims generally does not have jurisdiction over *quantum meruit* or implied-in-law contract claims."); *Lee v. United States*, 127 Fed. Cl. 734, 745

---

[4] "A "book account" has been defined as "a detailed statement, kept in a book, in the nature of a debit and credit, arising out of contract or some fiduciary relation. . . " *Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845, 848–49 (Del. Super. Ct. 1980). In other states, a "book account" is defined by statute:

> A detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner.

Cal. Code Civ. Pro. § 337a; *see also Martini E Ricci Iamino S.P.A.-Consortile Societa Agricola v. Western Fresh Marketing Services, Inc.*, 54 F.Supp.3d 1094, 1108 (E.D. Cal. 2014). While there appears to be no decision specifically addressing whether a "book account" claim is viable within the CFC, contracts implied in law are generally not cognizable. *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996) ("We have repeatedly held that [the jurisdiction of the claims court] extends only to contracts either express or implied in fact, and not on contracts implied in law") (citation omitted).

(2016) *(*citing *International Data Prods.*, 492 F.3d 1317, 1325 (Fed. Cir. 2007) and *Trauma Serv. Grp., Ltd. v. United States*, 33 Fed. Cl. 426, 432 (1995).

**Conclusion**

Because Sandstone failed to comply with 41 U.S.C. § 7104(b)(3), which required that Sandstone file its Complaint within 12 months from the date of receipt of the contracting officer's decision, the United States' Motion to Dismiss is **GRANTED.** The Clerk is **DIRECTED** to enter a final judgment dismissing the Complaint.

   **IT IS SO ORDERED.**

s/      David A. Tapp
DAVID A. TAPP, Judge